TODD BLANCHE
Deputy Attorney General of the United States
SIGAL CHATTAH
Acting United States Attorney
District of Nevada
Nevada Bar No. 8264
AFROZA YEASMIN
Assistant United States Attorney
501 Las Vegas Boulevard South, Suite 1100
Las Vegas, Nevada 89101
(702) 388-6336
Afroza.Yeasmin@usdoj.gov
*Attorneys for the United States*

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEVADA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>ADAM JOSEPH CARDENAS,<br><br>Defendant. | Case No.: 2:24-cr-000254-GMN-DJA<br><br>**Government's Sentencing Memorandum** |

## I. Introduction

Defendant Adam Joseph Cardenas sexually exploited a toddler and a prepubescent child, both of whom were in his care, by sexually abusing them and producing child sexual abuse material (CSAM) of the sexual abuse he forced upon them. The defendant also maintained a collection of CSAM depicting numerous other unidentified children, also as young as infants, on digital devices in his possession. Cardenas' actions in this case warrant a sentence of 360-months of imprisonment, with credit for time served while in

State custody, and a lifetime term of supervised release with all conditions recommended in the Presentence Investigation Report (PSR). ECF No. 35.

## II. Factual Background[1]

The defendant had two children in his care, the youngest of which was only approximately three years old at the time of the recorded sexual abuse. In February 2020, a Cybertip revealed that the defendant distributed potentially home-made CSAM to a group of users on the social media application, KIK. The investigation into the defendant revealed that he was sexually abusing two children in his care, a seven-year-old and a three-year-old. The defendant also recorded this abuse, preserving it for future viewing by himself and others.

A review of the defendant's electronic devices revealed that the defendant maintained a collection of approximately 129 images and 32 videos of CSAM across his digital devices. The collection of CSAM showed that defendant sexually abused VICTIM-1 and VICTIM-2 on multiple occasions. The collection of CSAM also depicted other children, as young as infants, who have not yet been identified.

The defendant was arrested on February 24, 2020, and charged in the state of Nevada with Sexual Assault and Lewdness with a Child Under 14 Years of Age in case number C-24-382356-1.

On December 19, 2024, a three-count criminal information was filed in the District of Nevada charging the defendant with two counts of Sexual Exploitation of a Child and one count of Possession of Child Pornography.[2] On the same day, the defendant pleaded

[1] The factual basis is contained in the Plea Agreement [ECF No. 17 at pg. 9-10] and supplemented by the PSR. ECF No. 35.

[2] ECF No. 1

guilty to a three-count information. Sentencing is currently scheduled for January 20, 2026.

The government and the defendant entered into a plea agreement in which the parties agreed to jointly recommend 360 months in custody with credit for the time he has served in primary state custody from February 24, 2020. Lastly, the parties agreed to recommend that the sentence in the instant matter run concurrent to the defendant's sentence in state of Nevada case number C-24-382356-1.

## III. Points and Authorities

### A. The Applicable Sentencing Guidelines

The sentencing guideline calculations in the Presentence Investigation Report ("PSR") are incorrect and the Court should apply the guideline calculations in the Plea Agreement that is jointly recommended by the parties.

United States Sentencing Guideline ("USSG") section 3D1.1 directs closely related counts to be grouped as one group pursuant to the rules enumerated in USSG § 3D1.2. USSG § 3D1.2(a) states that counts involving the same victims and same act or transaction be grouped together. While USSG § 3D1.2(d) addresses offenses where there is aggregate harm and specifically enumerates child pornography offenses. USSG § 3D1.2(d) specifically excludes USSG § 2G2.1 offenses from being grouped with other counts of child pornography offenses.

Specifically, USSG § 3D1.2(d) does not group a count of Sexual Exploitation of Children with a count of Possession of Child Pornography. Additionally, in the instant matter, USSG § 3D1.2(a) is not applicable as Count Three of the information, Possession of Child Pornography, has numerous victims, in addition to VICTIM-1 and VICTIM-2, who are the only victims enumerated in Counts One and Two, Sexual Exploitation of

Children, respectively. Application note 3 of USSG § 3D1.2 states that "[u]nder subsection (a), counts are to be grouped together when they represent essentially a single injury or are part of a single criminal episode or transaction involving the same victim." That is simply not the case here. The defendant inflicted harm upon numerous children, on numerous occasions, by possessing CSAM of many different children. There is neither a singular harm, nor one criminal episode involving the same victim.

To apply USSG § 3D1.2(a), which deals with a singular injury to a singular victim, instead of USSG § 3D1.2(d), which specifically takes into account the aggregate harm caused in these types of offenses, would inappropriately relieve the defendant of accountability for the harm he caused numerous unidentified children. Albeit, in this specific instance, the difference in the grouping proposed by the parties and in the PSR is mostly academic as the resulting total offense level only differs by one offense level and is still well over the highest offense level of 43.

Both the PSR and the Plea Agreement calculate that the total offense level for Count One of the information, Sexual Exploitation of Children, VICTIM-1 as 42 and for Count Two of the information, Sexual Exploitation of Children, VICTIM-2 as 46.[3] Similarly, both the PSR and the Plea Agreement calculate an additional 5 level increase of the total offense level based on the Chapter Four Enhancement of pattern of activity.[4] The guideline calculation between the PSR and the Plea Agreement only differs as to the grouping of Counts One and Two with Count Three, Possession of Child Pornography. The Plea Agreement correctly does not group Count Three with either Count One or Two, resulting in three groups. The highest offense level of the three groups is 46, which is

[3] ECF No. 13 at 11-12 and ECF No. 35 at ¶ 20-47.
[4] *Id.*

increased by 3 offense levels pursuant to USSG § 3D1.4, resulting in a total offense level of 54 before acceptance of responsibility.[5] The PSR however groups as one group Count Two and Three, and another group as Count One, so there is only a two level increase, resulting in a total offense level of 53 before acceptance of responsibility.

As previously mentioned, the difference in the grouping is mostly academic as the resulting offense level is ultimately the same in this case, but the government notes the different to address the proper application of grouping as enumerated in USSG § 3D1.2(d).

The defendant is in criminal history category V.[6] The advisory guideline range is life.[7] For Counts One and Two, Sexual Exploitation of Children, the statutory maximum sentence is 30 years, and the mandatory minimum sentence is 15 years.[8] For Count Three, Possession of Child Pornography, the maximum term of imprisonment is 20 years.[9]

**B. Term of Imprisonment**

The goal of sentencing is to "'impose a sentence sufficient but not greater than necessary' to reflect the seriousness of the offense, promote respect for the law, and provide just punishment; to afford adequate deterrence; to protect the public; and to provide the defendant with needed . . . correctional treatment." *United States v. Carty*, 520 F.3d 984, 991 (9th Cir. 2008) (quoting 18 U.S.C. § 3553(a)). The Court considers "the nature and circumstances of the offense and the history and characteristics of the defendant," "the need for the sentence imposed," "the kinds of sentences available," the

---

[5] ECF No. 16 at 12.
[6] PSR at 25.
[7] Pursuant to the USSG the advisory guideline range for an offense level of 43 with a criminal history of V, is life.
[8] PSR at 25.
[9] *See* 18 U.S.C. § 2252A(b)(2).

applicable sentencing guideline range, any pertinent policy statement, sentences imposed on other similarly situated defendants, and the need for victim restitution. 18 U.S.C. § 3553(a). Considering the relevant factors, the Court should impose a 360-month sentence.

The defendant sexually abused and created child sexual abuse material of children, as young as a toddler, who were in his supervisory control. The defendant victimized a toddler, the most vulnerable in his care, who inherently was unable to tell anyone, seek help, fight back or in any way escape the abuse being inflicted upon them in the moment, and then preserved the abuse in recordings for future viewing. The defendant went further to conceal his behavior by housing the images in an application designed to conceal images and files on digital devices. The defendant's exploitation of children does not begin or end with the children in his care. He exploited and harmed numerous other children including the victim in his prior conviction, and the numerous children depicted in the collection of CSAM he maintained on his digital devices.

Images of child sexual abuse material depict the worst and most intimate days of a child's life—the day that they were raped, tortured, assaulted, and abused,often by someone they trusted—like a father, uncle, friend, or coach. The defendant sexually exploited a child who *trusted* him. He got sexual pleasure from a child's humiliation and pain. The defendant's actions demand a significant sentence.

In 2012, the Sentencing Commission submitted an evaluation of the child pornography guidelines in its Report to the Congress: Federal Child Pornography Offenses (*available at* http://www.ussc.gov/news/congressional-testimony-and-reports/sex-offense-topics/report-congress-federal-child-pornography-offenses) (the "2012 Report"). The 2012 Report opens stating: "All child pornography offenses, including the simple possession of

child pornography, are extremely serious because they both result in perpetual harm to victims and validate and normalize the sexual exploitation of children."[10]

At the beginning of its report, the Sentencing Commission emphasized the terrible impact of child pornography. It described what those in the criminal justice system have long known: child pornography has a highly destructive, life-long impact on victims. It devastates children and undermines all of society because the effects of this abuse extend to those who are close to the victim, including parents, partners, spouses, friends, and siblings, and because it destroys the fabric of a community when rape, violence, and exploitation of children are normalized and traded, collected, and used for sexual gratification.

In April 2020, the Sentencing Commission submitted an evaluation of the effect various lengths of sentences had on recidivism in its report "Length of Incarceration and Recidivism." (*Available at* https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2020/20200429_Recidivism-SentLength.pdf ) (the "2020 Recidivism Report"). The Commission analyzed the relationship between length of incarceration and recidivism by examining five study units through three models.[11] In its evaluation, "[t]he Commission consistently found that incarceration lengths of more than 120 months had a deterrent effect."[12] It found that offenders who served sentences longer than ten years were 30 to 45 percent less likely to recidivate eight years after release.[13] Offenders incarcerated between 60 and 120 months were approximately 17 percent less likely to recidivate during the same time period following release.[14] For incarceration

[10] *Id.* at vi.
[11] *Id.* at 30.
[12] *Id.* at 4.
[13] *Id.* at 30.
[14] *Id.*

lengths of 60 months or less, there was no statistically significant deterrent effect.[15] Based on this data, the 2020 Recidivism Report concluded that sentences of 60 months or more had a statistically significant effect on deterrence and recidivism.[16]

The defendant's actions warrant a sentence of 360 months (30 years) with credit for time served, to be served concurrently to the Nevada state case.[17] The Ninth Circuit has upheld much longer sentences for defendants convicted of similar charges. In *United States v. Wilkinson*, 706 F. App'x 337, 341 (9th Cir. 2017), *cert. denied*, 138 S. Ct. 1172 (2018), the Ninth Circuit upheld a 130-year sentence as substantively reasonable. The district court sentenced the defendant to the statutory maximum for each charged count and ran the sentences consecutively with each other.[18] Other courts around the country have likewise imposed lengthy sentences against child pornography offenders with similar charges. *See United States v. Betcher*, 534 F.3d 820 (8th Cir. 2008) (750-year sentence); *U.S. v. Hamilton*, 548 F. App'x. 728 (2d Cir. 2013) (150-year sentence); *United States v. Johnson*, 451 F.3d 1239 (11th Cir. 2006) (140-year sentence); *United States v. Castillo*, 427 F. App'x. 748 (11th Cir. 2011) (130-year sentence); *U.S. v. Hodge*, 729 F.3d 717 (7th Cir. 2013) (115-year sentence); *U.S. v. Williams*, 561 F. App'x. 784 (11th Cir. 2013) (100-year sentence); *United States v. Sarras*, 575 F.3d 1191 (11th Cir. 2009) (100-year sentence); *U.S. v. Herrick*, 512 F. App'x. 534 (6th Cir. 2013) (95-year sentence); *United States v. Snyder*, 425 F. App'x. 64 (2d Cir. 2011) (75-year sentence); *U.S. v. Boroczk*, 705 F.3d 616 (7th Cir. 2013) (70-year sentence); *United States v. Miller*, 538 F. App'x. 501 (5th Cir. 2013) (70-year sentence).

---

[15] *Id.*

[16] *Id.*

[17] The defendant has been in custody since February 24, 2020. On January 20, 2026, the defendant will have served 70 months and 27 days. Therefore, the total sentence with the accounted credit, is 290 months in custody (a total of 70 months credit).

[18] *Id.*

Cases in this district show that judges in Nevada also recognize the extreme harm that these crimes inflict on their victims. Notably, United States District Court Judge Jennifer Dorsey sentenced Antonio Masters (a 28-year-old man) to nearly 30 years imprisonment on a single count of Sexual Exploitation of a Minor for a single victim. 2:17-cr-007-JAD-CWH. United States District Court Judge Miranda Du sentenced Danny Salzer (a 53-year-old man with end-stage stomach cancer) to 17 1/2 years' imprisonment on three counts of Sexual Exploitation of a Minor and a single count of Possession of Child Pornography. 2:18-cr-189-MMD-EJY.

Nevada judges are doing exactly what other judges are doing across this country because they realize that production of child pornography is one of the most damaging harms that can be done to a child. The parties' joint recommendation for a 360-month sentence for the defendant's conduct of sexually exploiting children in his care and possessing additional CSAM is substantively reasonable and warranted. A sentence of 360 months serves a strong deterrent purpose while also giving him credit for his acceptance of responsibility and sparing the victims in this case additional trauma and harm. To give him any further variance would defy the goals of sentencing set forth in 18 U.S.C. § 3553. The parties' joint recommendation in this case reflects careful consideration of the facts, the responsibility taken by the defendant, and every possible benefit of 18 U.S.C. § 3553 given to him. A 360-month sentence is sufficient, but not greater than necessary, to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, and most importantly, to protect the public.

//

//

//

**C. Supervised Release**

Pursuant to the plea agreement, the parties jointly request a lifetime term of supervised release with the imposition of all conditions recommended by probation in the PSR. [19]

The PROTECT Act of 2003, codified in relevant part in 18 U.S.C. § 3583(k), imposes a mandatory minimum term of five years of supervised release, and a maximum term of life, for offenses related to the trafficking of child pornography. The 2012 Report discussed the necessity, appropriateness, and the widely-applied imposition of lifetime supervision in child pornography matters as "effective supervision and treatment of offenders (as a condition of supervision) are important means of reducing recidivism and promoting public safety"[20] The 2012 Report referenced a study conducted by the Sentencing Commission that tracked the recidivism rates of qualifying child pornography offenders with non-production convictions. The 2021 Sentencing Commission Report to Congress (hereinafter "2021 Report") expanded on the 2012 Report providing more updated statistics related to the recidivism rates of qualifying child pornography offenders who were released from incarceration or placed on supervision in 2015.[21] Further highlighting the high recidivism rates that continue to persist is the fact that, in the 2023 fiscal year, 12.7% of offenders convicted for trafficking child pornography, 25.6% of offenders convicted for possessing child pornography, and 12.5% of offenders convicted

[19] *See* PSR at 26-32.
[20] U.S. Sent'g Comm'n, *Report to Congress: Federal Child Pornography Offenses*, ch. 10-11 (Dec. 2012).
[21] U.S. Sent'g Comm'n, *Report to Congress: Federal Child Pornography Offenses* (June 2021).

for receiving child pornography had a prior sexual abuse or child pornography conviction.[22]

To address recidivism, Probation imposes two categories of conditions on offenders of child pornography. The first addresses rehabilitation by requiring treatment and restricting behaviors that are associated with sexual deviance, while the second addresses deterrence through early detection of violations or indicia of the potential in a relapse of behavior. The aforementioned Reports not only highlight the rates of recidivism in child pornography offenders but also discuss the positive[23] impact that longer terms of supervision have on preventing new abuse or relapsing into old patterns.

In this case, there is a heightened necessity to both prevent recidivism and detect as early as possible the indicia of relapse. The defendant not only sexual assaulted two children in his care, but he produced child sexual abuse material of each child, exponentially exacerbating the harm committed against them and memorializing it for further harm. The defendant has demonstrated that he is a repeat danger to the most vulnerable in our community, children as young as infants, both online and in person.

Further harm to children will be reduced if he remains on supervision for the longest period of time possible, which in the instant matter is a term of life. A lengthy term of supervision will go far in keeping the community safe from the defendant by providing offender management services and keeping him accountable. Aside from sex offender

[22] SOURCE: United States Sentencing Commission, FY 2019 through FY 2023 Datafiles, USSCFY19-USSCFY23. https://www.ussc.gov/research/datafiles/commission-datafiles

[23] The 2012 Report states that "longer terms of supervision may deter some offenders from committing new offenses but also present other offenders with an increased opportunity to violate the conditions of supervision (footnote 43)." Early detection of relapsing behavior through violations of the conditions of supervised release further demonstrates the necessity of continued or longer terms of supervision.

rehabilitation, which is undoubtedly warranted in this case considering the defendant demonstrated deviant sexual behavior,[24] he would also benefit from the recommended special conditions enumerated in the PSR.

Conditions of supervised release may only be imposed if they are reasonably related to the goals of deterrence, protection of the public, or rehabilitation of the offender. 18 U.S.C. §§ 3583(d)(1), 3553(a). However, conditions of supervised release need not relate to the defendant's underlying offense, so long as they relate to at least one of these goals. *United States v. Wise*, 391 F.3d 1027, 1031 (9th Cir. 2004). The Ninth Circuit has consistently held that as long as the district court makes a factual finding which establishes a nexus between the condition and one of the goals articulated in 18 U.S.C. § 3553(a)(2)(B)-(D), the district court is not abusing its discretion to impose such a condition. *United States v. Terrigno*, 838 F.2d 371, 374 (9th Cir. 1988), *see also United States v. Hinkson*, 585 F.3d 1247, 1264 (9th Cir. 2009). Each of the conditions listed in the PSR are related to the defendant's deterrence, protection of the public, or his rehabilitation. Accordingly, the government asks that the special conditions be imposed as recommended by the probation office.

## IV. Conclusion

Provided the severity of the defendant's crimes, and the gravity of his actions as articulated in the facts of this case, a 360-month sentence, with 70 months credit for time served[25] and to be served concurrent to the Nevada state case, with a lifetime term of supervision to follow, including all the special conditions listed in the PSR, is both appropriate and sufficient, but not greater than necessary, to meet the goals of sentencing.

---

[24] PSR at 5-7.

[25] This total comes to 290 months in custody.

Any further downward variance would negate the seriousness of this offense, fail to deter future conduct, and result in unwarranted sentencing disparities. Based on the totality of circumstances, the requested sentence is sufficient but not greater than necessary.

Dated this the 7th day of January 2026.

Respectfully Submitted,

TODD BLANCHE
Deputy Attorney General of the United States

*/s/ Afroza Yeasmin*
AFROZA YEASMIN
Assistant United States Attorney